IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| David Ohlrich, | ) |
| | ) Case No. 13 C 50391 |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Village of Wonder Lake, et al., | ) |
| | ) Judge Philip G. Reinhard |
| Defendants. | ) |

**ORDER**

For the reasons stated below, defendant Timothy Harding's motion for partial summary judgment [83] is granted in part and denied in part.

**STATEMENT-OPINION**

This case arises out of plaintiff David Ohlrich's six-count complaint against the Village of Wonder Lake, Wonder Lake Police Officer Timothy Harding, McHenry County, McHenry County Sheriff Keith Nygren, and McHenry County Sheriff's deputy Steven Nulle (collectively "defendants"). [1]. As relevant to the current motion, plaintiff's complaint includes claims of excessive force (Count I) and battery (Count IV) against defendant Harding and requests both compensatory and punitive damages.

On April 3, 2015, Harding filed a motion for partial summary judgment [83], as well as a memorandum in support [84], and Local Rule 56.1(a)(3) statement of facts [85]. Harding argues that summary judgment should be granted in his favor with respect to plaintiff's punitive damages claim on Count IV because he is immune under Illinois law. He also argues that he is entitled to qualified immunity with respect to Count I to the extent plaintiff's excessive force claim is based on improper handcuffing. On June 4, 2015, plaintiff filed his response [102], Rule 56.1(b)(3)(A)-(B) response to defendants' statement of facts [104], and Local Rule 56.1(b)(3)(C) statement of additional facts [103]. On June 25, 2015, Harding filed his reply [106], as well as his response to plaintiff's statement of additional facts [107]. Harding's motion for partial summary judgment is now ripe for the court's review.

On summary judgment, the court construes all facts and draws all inferences in the light most favorable to the non-moving party. *Schepers v. Commissioner, Indiana Dept. of Corrections,* 691 F.3d 909, 913 (7th Cir. 2012). The court does not weigh evidence or determine the credibility of witness testimony. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th

1

Cir. 2011). Instead, the court only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That said, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Prior to addressing the merits of Harding's motion, it is necessary to set forth the undisputed facts located in the parties' Local Rule 56.1 Statements of Material Fact. In addition, the court is cognizant of its obligation to construe all disputed and undisputed facts in the light most favorable to plaintiff and does so accordingly. *See Schepers*, 691 F.3d at 913.

**A. FACTUAL BACKGROUND.**

On December 25, 2012, plaintiff's sister Donna Barry was at plaintiff's house visiting. [107] at ¶ 2. During her visit, she called 911 because she was experiencing chest pains. [107] at ¶ 1. After she called 911, Barry went outside and plaintiff fell asleep on a recliner. [107] at ¶¶ 3-4. The parties dispute the source of Barry's chest pains and whether she exited the house voluntarily. According to plaintiff, she went outside voluntarily to wait for the ambulance. [107] at ¶ 4.

At one point, Village of Wonder Lake Lieutenant Firefighter Christopher Weber arrived at the scene and spoke to Barry. [104] at ¶¶ 50-54. He asked her to step back into the house because it was December 25th and it was cold outside. [104] at ¶ 55. After speaking to Barry, Weber called dispatch and asked for police assistance. [104] at ¶ 57.

When the ambulance arrived, Barry told them she was having chest pains and they placed her on a stretcher in the ambulance. [107] at ¶¶ 5-6.

At approximately 4:30 p.m. on December 25th, Village of Wonder Lake police officer Timothy Harding was on duty and asked to assist on an ambulance call. [104] at ¶¶ 1-3. He arrived at plaintiff's residence and observed Barry. [104] at ¶¶ 3-4. Barry's face was red from crying. [104] at ¶ 11. According to Barry, Harding spoke to her in the back of the ambulance and asked her questions. [107] at ¶ 7.

The parties dispute the content of Harding's questions and Barry's answers. According to plaintiff, Harding asked whether plaintiff had abused her and Barry stated that he had not. [107] at ¶ 8.

After the conversation, Harding called dispatch and requested backup. [104] at ¶ 13. Deputy Nulle of the McHenry County Sheriff's Police Department arrived shortly afterwards. [104] at ¶ 15. Harding explained the situation to Nulle and explained that he intended to speak with plaintiff. [104] at ¶ 16. Harding looked through the front window and observed plaintiff, who appeared to be sleeping or slumped over, seated in a recliner. [104] at ¶¶ 17-18.

2

The officers entered plaintiff's home through a garage service door. [104] at ¶ 21; [107] at ¶ 9. Harding walked over to plaintiff, who was still in the recliner. [104] at ¶ 24. The parties dispute much of what occurred next with regard to Harding's and plaintiff's conduct. According to plaintiff, Harding woke plaintiff up by stomping on his foot, then picked plaintiff up off the chair, slammed him to the floor, and kneed him in the ribs. [107] at ¶¶ 12-14. It is undisputed that Harding handcuffed plaintiff. [104] at ¶ 34; [107] at ¶ 15. It is disputed whether the handcuffs were checked for fit. *See* [104] at ¶ 34.

According to plaintiff, the officers got him to his feet and dragged him out of his house and across the yard to a police vehicle. [104] at ¶ 35; [107] at ¶16. During this time, it is undisputed that plaintiff complained that he needed his shoes and mentioned that his cats were "locked up." [104] at ¶ 38. According to plaintiff, when they arrived at the police vehicle the officers knocked him to his knees, dragged him into the back seat onto his belly, and slammed the door shut on his head. [104] at ¶ 42; [107] at ¶¶ 17-18.

It is undisputed that Harding drove plaintiff to the Wonder Lake Police station. [104] at ¶ 43. Again, much of what occurred during the drive is disputed. According to plaintiff, while driving to the station Harding looked back at plaintiff and laughed. [107] at ¶19. Plaintiff also testified that Harding was screaming at plaintiff and accusing him of beating and raping his sister. [107] at ¶ 20.

According to plaintiff, when they arrived at the station, Harding pulled him out of the car. [104] at ¶44. It is undisputed that he was taken out of the vehicle, taken into the station, and within five to ten minutes he was booked, his handcuffs were removed, and he was taken into a cell. [104] at ¶¶ 45-48. Plaintiff testified that he could not recall if he had wrist pain at any time between when he was handcuffed at his home and when the handcuffs were removed. [104] at ¶¶ 49, 62. It is undisputed that plaintiff was not experiencing pain of any kind when he arrived at the jail, and was experiencing knee pain when placed in his cell but did not feel pain anywhere else in his body. [104] at ¶¶ 63-64.

It is undisputed that after plaintiff's release, he sought medical care at Centegra Medical Center on December 29, 2012. [104] at ¶ 65; [107] at ¶ 21. According to plaintiff, he suffered injuries to his head, right foot, ribs, and knees. [107] at ¶ 22. It is undisputed that he did not complain to the attending physician about being handcuffed too tightly, about wrist pain, a loss of sensation in his hands, wrists, or arms, and the physician did not notice anything unusual or abnormal about the appearance of his wrists. [104] at ¶¶ 66-67.

## B. ANALYSIS

Defendant Harding presents two arguments in his motion for partial summary judgment. First, he argues that he is entitled to summary judgment with respect to plaintiff's request for punitive damages on his state law battery claim (Count IV). Harding previously made this argument in a motion to strike plaintiff's punitive damages request. *See* [20]. On May 20, 2014,

3

the court denied the motion without prejudice to Harding raising the argument again at the summary judgment stage. *See* [37]. Second, Harding argues that he is entitled to summary judgment with respect to plaintiff's excessive force claim (Count I) to the extent it is based on improper handcuffing. The court will address each argument in turn.

1. Count IV – Immunity from Punitive Damages.

The parties' arguments on this issue are substantially similar to those made pursuant to Harding's previous motion to strike. Harding again argues the Illinois Tort Immunity Act ("the Act") prevents an award of punitive damages because Harding was acting in the scope of his employment as a police officer at the time of the alleged battery. Plaintiff again responds that the Act does not cover police officers sued in their individual capacities and that the plain language of the statute does not support Harding's contentions.

Section 2-102 of the Illinois Tort Immunities Act states that a "public official" cannot be liable for punitive damages in certain circumstances. Specifically it provides:

> [A] local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. In addition, no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

745 ILCS 10/2-102 (West 2012).

Thus, as the statute indicates, Section 2-102, would shield defendant Harding from punitive damages if (1) his is considered a "public official;" and (2) he allegedly battered plaintiff "while serving in an official executive. . . capacity." *Id.* Plaintiff argues that Harding is not a "public official" and that because plaintiff is suing Harding in his individual capacity, the statute does not apply and Harding is not shielded from punitive damage liability.

As the court noted in its order denying Harding's motion to strike without prejudice, there is a long-standing split amongst district courts in Illinois with regard to whether Section 2-102 applies to police officers sued for actions made in the course of their duties. *Compare Golden v. Village of Glenwood*, 2015 WL 1058227, at **3-4 (N.D. Ill. Mar. 6, 2015) *and Reese v. May*, 955 F. Supp. 869, 875-76 (N.D. Ill. 1996) (police officers are public officials and act in an official executive capacity within the meaning of Section 2-102 when they engage in "the performance of uniquely governmental functions which involve[] discretionary duties"), *with Wallace v. City of Washington*, 2015 WL 1743390, at *4 (C.D. Ill. Apr. 14, 2014) *and Gay v. City of East Moline*, 2013 WL 5366101, at **2-4 (C.D. Ill. Sept. 25, 2013) (police officers are not public officials within the meaning of Section 2-102, both because the statute should be

applied only to officials with "supervisory authority," and because officers cannot be said to act within their official executive capacity when they are sued in their individual capacities). To date, neither the Illinois Supreme Court nor the Seventh Circuit has addressed the issue.

It is well established that "[f]ederal courts must interpret a state statute as that state's courts would construe it." *A Woman's Choice-East Side Women's Clinic v. Newman*, 305 F.3d 684, 696 (7th Cir. 2002). After carefully considering the issue, this court is persuaded by those decisions which have found that the Illinois Supreme Court would construe Section 2-102 to apply to police officers acting pursuant to their discretionary duties. First, with regard to the first requirement, the statute itself does not define "public official." The Illinois Supreme Court has held that "[w]hen a statutory term is not expressly defined, it is appropriate to denote its meaning through its ordinary and popularly understood definition." *People v. Baskerville*, 2012 IL 111056, ¶ 19. Although such an analysis would ordinarily be open to various interpretations, here it is simplified by the fact that in the context of the first amendment, the Illinois Supreme Court has expressly found that "a police officer is a public official." *Reed v. Northwestern Pub. Co.*, 530 N.E.2d 474, 480 (Ill. 1988). The court's analysis in *Reed*, while relying to some degree on United States Supreme Court holdings, was in large part based on its understanding of the plain and ordinary meaning of the term "public official." *See id.* at 479-81 (specifically noting that "[p]laintiff also argues that 'the Supreme Court has not held that anyone as low ranking as a policeman or as a teacher is a public official,' and suggests that the designation applies only to higher-ranking employees[,]" but rejecting the plaintiff's argument, in part because police officers enjoy discretionary authority in pursuit of their duties). Given the holding of *Reed* with regard to the identical term "public official" in a similarly ambiguous situation, this court finds that the Illinois Supreme Court would likely construe the term "public official" in Section 2-102 to apply to police officers.

Turning to the second requirement, there is no reason to believe that when Section 2-102 refers to *acts* made "in an official executive . . . capacity" that the statute is somehow restricted to official capacity *claims*, particularly because the statute immediately goes on to say that it applies to actions "brought directly or indirectly against [the public official] by the injured party or a third party." *See* 745 ILCS 10/2-102 (West 2012). To the contrary, the Illinois Supreme Court has routinely applied Illinois statutes which refer to acts taken within an officer's official capacity and has construed the term as applying to actions taken by the officer in the context of his or her duties. *See, e.g. Baskerville*, 2012 IL 111056, at ¶¶ 16, 35 (noting that 720 ILCS 5/31–1(a) applies when a person obstructs the performance of a peace officer "of any authorized act within his official capacity" and finding that an officer was performing an act within his official capacity when executing a traffic stop); *see also People v. Williams*, 940 N.E.2d 50, 56 (Ill. 2010) (noting that "Section 33–3(b) of the Criminal Code of 1961 provides that a public employee commits misconduct when, in the public employee's official capacity, he knowingly performs an act he knows is forbidden by law" and applying the statute in the context of a police dispatcher informing an associate of police activity near the associate's home). Here, plaintiff alleges that Harding battered him while conducting an arrest. Given the plain language of Section 2-102 and the Illinois Supreme Court's treatment of similar statutes, this court finds that

5

the Illinois Supreme Court would likely find that actions taken pursuant to an arrest would constitute acts made "in an official executive . . . capacity" within the meaning of Section 2-102. Thus, the immunity provision of Section 2-102 applies to Harding with regard to the state law battery claim.

For the foregoing reasons, Harding's motion for partial summary judgment with regard to punitive damages on plaintiff's state battery claim (Count IV) is granted.

2. Excessive Force Based on Handcuffing.

Harding argues that he is entitled to qualified immunity to the extent plaintiff's excessive force claim (Count I) is based on improper handcuffing. The Seventh Circuit has held that there is a two-step analysis when considering whether a defendant is entitled to qualified immunity. "First, the plaintiff must present evidence that, taken in the light most favorable to the plaintiff, would allow a reasonable fact finder to determine that he has been deprived of a constitutional right. If the plaintiff meets that burden, we must determine whether the particular constitutional right was clearly established at the time of the alleged violation. If the right was clearly established, the government actor is not entitled to qualified immunity." *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (internal citations omitted).

It is important to note that plaintiff's excessive force claim is not split into separate counts or allegations of wrongdoing, one of which involves improper handcuffing; rather, Count I is explicitly based on the totality of the circumstances surrounding his arrest and transfer to the jail. *See* [1] at ¶¶ 38-39. This comports with the Seventh Circuit's analysis of excessive force claims. "To determine whether the force used to effect a seizure is unreasonable, we must examine the totality of the circumstances surrounding the incident. The severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight are specific factors for courts to consider[.]" *Sallenger*, 473 F.3d at 739 (internal quotations and alterations omitted).

Plaintiff's excessive force claim is based on his testimony regarding Harding's actions toward him despite his non-resistance, including waking him up by stomping on his foot, picking him up and slamming him on the ground, kneeing him in the ribs, improperly handcuffing him without checking for fit, dragging him across the yard to a police vehicle, slamming the door shut on his head, laughing and screaming at him during the drive, and pulling him out of the vehicle when they had arrived at the jail. Virtually all of plaintiff's accusations involve disputed facts. Under these circumstances, there is a genuine issue of fact as to whether plaintiff was "deprived of a constitutional right." *See Sallenger*, 473 F.3d at 742 ("Since the . . . reasonableness inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.") (internal quotations and alterations omitted).

6

Harding does not appear to challenge that plaintiff has raised a genuine issue of fact regarding his excessive force claim. Rather, as best as the court can determine, Harding asks the court to excise plaintiff's allegations regarding improper handcuffing from the totality of the circumstances analysis and rule that the evidence regarding improper handcuffing on its own is insufficient to raise a genuine dispute that he was deprived of a "clearly established" right. This would be improper. As Harding acknowledges, the Seventh Circuit has held that allegations of improper handcuffing can form the basis of an excessive force claim in a variety of circumstances. *See Payne v. Pauley*, 337 F.3d 767, 779-80 (7th Cir. 2003) (collecting cases). Thus, there is nothing improper with plaintiff's excessive force claim including allegations of improper handcuffing, even if Harding is correct that the evidence of handcuffing standing alone would be insufficient to overcome summary judgment.

The court's conclusion is bolstered by the fact that the Seventh Circuit has rejected a very similar argument in *Sallenger v. Oakes*, 473 F.3d 731 (7th Cir. 2007). In *Sallenger*, the plaintiff raised an excessive force claim against defendant police officers for their conduct while placing him under arrest. Part of his testimony included the officers' allegedly improper use of "[a] hobble[, which] is a cord that is looped around the lower legs and then connected to a strap which is attached to handcuffs." *Id.* at 735. Defendants moved for summary judgment on the basis that they were entitled to qualified immunity on those allegations regarding the hobble. The district court rejected defendants' argument and the Seventh Circuit affirmed. Specifically, the Seventh Circuit found that:

> Although the cases relied on by the defendants do suggest that the mere use of a hobble was not clearly established as constitutionally suspect, this does not speak to the totality of circumstances surrounding the use of the hobble on [plaintiff]. Here, the alleged excessive force does not solely, or perhaps even primarily, involve the use of the hobble. Rather, here, the officers repeatedly struck [plaintiff] with closed-fist blows and blows with a flashlight after he was handcuffed; they continued to strike him after he had stopped moving and placed him in a hobble; and, they failed to put him immediately on his side after they hobbled him. The question is not whether [plaintiff's] right to be free from the officers' use of the hobble was clearly established; rather, the issue is whether [plaintiff's] right to be free from the whole range of excessive force as described by the district court was clearly established.

*Id.* at 741-42.

Here, as in *Sallenger*, plaintiff's alleged excessive force does not solely, or even primarily, involve the use of the handcuffs. Thus, the question is not whether plaintiff's right to be free of Harding's use of the handcuffs was clearly established, but rather whether his right to be free from the whole range of excessive force that he alleges and testified to was clearly established. As noted, Harding does not dispute that plaintiff has raised a genuine issue of fact on this issue. As such, Harding's motion for partial summary judgment with regard to the alleged improper use of handcuffs must be denied.

7

For the reasons stated above, defendant Harding's motion for partial summary judgment [83] is granted with respect to plaintiff's request for punitive damages on Count IV and denied with respect to the allegations of improper handcuffing on Count I.

Date: 8/10/2014                ENTER:

                              _____
                              United States District Court Judge


                              Electronic Notices (LC)